## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>       Plaintiff,<br><br>vs.<br><br>Jeremiah John Red Tomahawk,<br><br>       Defendant. | Case No. 1:24-cr-00208 |

## INDICATIVE ORDER ON MOTION TO RELEASE EVIDENCE

[¶ 1]    THIS MATTER comes before the Court on a Motion to Release Evidence for Forensic Testing filed by the Defendant on February 25, 2026. Doc. No. 171. The United States filed a Response on March 3, 2026. Doc. No. 182. The Defendant filed a Reply on March 6, 2026. Doc. No. 184. The United States filed a Sur-Reply on March 13, 2026. Doc. No. 188. The Defendant filed a Sur-Response on March 20, 2026. Doc. No. 191.

[¶ 2]    On February 25, 2026, the Defendant appealed the jury's verdict to the Eighth Circuit. Doc. No. 172 (Case No. 26-1369). The Defendant filed a Motion to hold his appeal in abeyance, which was denied without prejudice "in the absence of action by the district court." United States v. Red Tomahawk, Case. No. 26-1369, Entry ID: 5620892 (8th Cir. Mar. 23, 2026). Generally, the filing of an appeal "divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); see also United States v. Ledbetter, 882 F.2d 1345, 1347 (8th Cir. 1989) (holding that Griggs "applies with equal force to criminal cases"). Specifically, United States v. Webster held that a motion for production of evidence was barred by the pending appeal because the requested evidence was exculpatory. 797 F.3d 531, 537 (8th Cir. 2015).

[¶ 3]   Under Federal Rule of Criminal Procedure 37(a), the Court has three options: defer consideration, deny the motion, or issue an indicative ruling that it would grant the issue if remanded. The Court will issue an indicative ruling. For the reasons set forth below, the Court would **GRANT** the motion if the court of appeals remands the case for that purpose.

## DISCUSSION

[¶ 4]   The Innocence Protection Act allows federal prisoners to request court-ordered post-conviction DNA testing. See 18 U.S.C. § 3600. To grant the request, the Court must find the Defendant satisfies ten different requirements. Of the ten, the following criteria are not in dispute and are considered satisfied: (1) the applicant has averred in a written motion that he is actually innocent of the crime he is serving a sentence for; (2) the evidence in question was secured in relation to the investigation or prosecution; (4) the United States possesses the evidence and it has not been tainted in any way; (5) the testing is reasonable; (9) applicant will provide DNA sample for comparison; (10) the motion is timely. 18 U.S.C. § 3600(a)(1)–(10).

[¶ 5]   The United States argues the Defendant has not met criteria 3, 6, 7, 8, and the Defendant's choice of lab under § 3600(c) is unqualified.

### I.   Criteria 3: Previous Testing

[¶ 6]   The United States argues the Defendant is precluded from requesting testing because he inquired about ability of North Dakota State Lab testing for saliva weeks prior to trial; however, decided not to pursue in order not to delay trial. Doc. No. 182, p. 6.

[¶ 7]   For evidence that was never tested, a defendant may waive their right to testing if they didn't request it "in a prior motion for postconviction DNA testing." 18 U.S.C. § 3600(a)(3)(A). If the evidence has been previously tested, as it was in this case, "the applicant is requesting DNA testing using a new method or technology that is substantially more probative than the prior DNA testing." Id. § 3600(a)(3)(B). Nothing in subsection B discusses previous opportunities to test.

- 2 -

Further, there is no caselaw stating any implicit requirement. In <u>United States v. Sherrod</u>, a defendant requested DNA testing on evidence that was available at trial but not tested. 446 F. Supp. 3d 385, 392 (C.D. Ill. Mar. 3, 2020). That court held "the failure to request DNA testing at trial [had] no bearing on this motion" for postconviction testing. <u>Id.</u> The Court finds this reasoning persuasive and declines to read an additional requirement into the statute that is not there.

[¶ 8]    The Defendant here requests additional testing to determine if the DNA is from saliva. This is a new method that is "substantially more probative than prior DNA testing." 18 U.S.C. § 3600(a)(3)(B). Therefore, the Court finds criteria 3 is satisfied.

## II.    Criteria 6 and 8: Innocence

[¶ 9]    The United States argues the presence of saliva would not prove actual innocence due to the corroborating evidence at trial. Doc. No. 182, pp. 4–5.

[¶ 10]   The statute requires the new evidence to support a theory of defense "not inconsistent with an affirmative defense presented at trial" that "would establish actual innocence" and "raise a reasonable probability that the applicant did not commit the offense." 18 U.S.C. § 3600(a)(6), (8). Two standards are at play in these sections. The theory must be able to establish actual innocence, but the evidence must only raise a reasonable probability of innocence. <u>Id.</u>

[¶ 11]   The United States relies on <u>United States v. Pitera</u>, a Second Circuit case that found lack of DNA evidence would not change the outcome. 675 F.3d 122 (2d Cir. 2012). In that case, a jury convicted the defendant of several offenses including murder in furtherance of a continuing criminal enterprise. <u>Id.</u> at 123. Twenty years after conviction, the defendant wanted evidence tested for DNA that would prove someone else committed the murders. <u>Id.</u> at 124. However, that individual admitted to committing the crimes with the defendant. <u>Id.</u> The district court denied the motion for DNA testing because lack of the defendant's DNA would not be exculpatory. <u>Id.</u> The circuit agreed because of the strong corroborative evidence: the co-defendant's testimony and

other physical evidence found in the defendant's possession, including jewelry from one of the victims and incriminating conversations by the defendant. Id. at 129. Relying on a Tenth Circuit case, the Second Circuit found it persuasive that the results of the DNA would not be "inconsistent with the government's theory of the case such that it calls into question the strength of the evidence against" the defendant." Id.

[¶ 12]  The Second Circuit case is not binding on this Court, and the Court finds it unpersuasive given the facts in the instant case. Here, we have no co-defendant testimony and no incriminating recordings of the Defendant. Contrary to Pitera, an alternate result on the DNA test would completely contradict the government's theory of the case. If there is no vaginal DNA on the swab of the Defendant's penis, the United States argues he still could have raped her. However, for there to be no vaginal DNA and only saliva DNA, Ms. Thunder Shield would have had to perform oral sex on the Defendant **after** he raped her and manage to remove all her vaginal DNA in the process. The remaining evidence is not strongly corroborating. Witnesses support both sides. Further, everyone agrees she was in his bed at one point in the evening. His DNA on the outside of her underwear does not prove a rape occurred. The prosecution highlighted the gaps in the evidence in her closing. Doc. No. 155, pp. 3:23–21:21. Male DNA was in her vagina, but not enough to identify the Defendant. Id. at 11:9–12. Ms. Thunder Shield's DNA was on his penis, but we don't know what type or from where. Id. at 10:23–24. His DNA is on the outside of her underwear. Id. at 10:24–25. The defense highlighted the lack of semen on Ms. Thunder Shield anywhere. Id. at 30:8–9. The lack of vaginal DNA from the Defendant's penal swab will raise a reasonable probability that the Defendant is innocent. Therefore, the Court finds the Defendant has met criteria 6 and 8.

### III.    Criteria 7: Identity

[¶ 13]   The United States argues that identity was not an issue at trial, therefore, this request is an improper use of the statute. The Defendant argues that denying his own identity is enough.

[¶ 14]   Neither party cites caselaw interpreting Section 3600(a)(7) to include only mistaken identity. The statute says identity of the perpetrator must have been an issue at the trial. In this case, the Defendant has been adamant he was not the perpetrator, and Ms. Thunder Shield committed a crime against him.

[¶ 15]   The Court finds persuasive the Ninth Circuit's discussion of Congress's purpose in passing Section 3600 in United States v. Watson:

> Consistent with our tradition, Congress has created a device to end the suffering of the innocent, where their innocence is scientifically demonstrable by DNA evidence, even after their convictions have become final. The most hallowed principle of our criminal law, protecting the innocent, requires us to eschew a crabbed, restricted construction of the statute.

792 F.3d 1174, 1183 (9th Cir. 2015).

[¶ 16]   The statute dictates that identity of the perpetrator be at issue. Congress's purpose was to create a remedy for the wrongly convicted. The Defendant has always argued he was not the perpetrator. DNA testing may be able to exonerate him. The Court finds this argument is in line with the purpose of Congress and the text of the statute. Therefore, the Defendant has satisfied criteria 7.

### IV.    Method of testing

[¶ 17]   The United States argues the facility requested by the Defendant is not qualified to conduct the testing. The Defendant argues the facility is accredited but would not object to an FBI lab.

[¶ 18]   Subsection (c) states that testing be carried out by the FBI or "another qualified laboratory if the court makes all necessary orders to ensure the integrity of the specific evidence and the reliability of the testing process and test results." 18 U.S.C. § 3600(c)(2).

[¶ 19]  The requested lab is Pure Gold Forensics, which lists accreditation by A2LA in compliance with FBI Quality Assurance Standards and meets ISO/IEC 17025:2017 for Biological Fluid Identification. Doc. No. 171-1. <u>See also</u> Pure Gold Forensics, Accreditation, https://www.puregoldforensics.com/accreditation/ (last visited Mar. 30, 2026). This information is verified by A2LA's website, which lists active accreditation. A2LA, Organization/Accreditation Information, https://customer.a2la.org/index.cfm?event=directory.detail&labPID=A0ED8474-1F96-4FFB-8B56-C60348A06EF7 (last visited Mar. 30, 2026).

[¶ 20]  The United States provides no evidence to disprove these accreditations. Therefore, the Court finds the laboratory qualified and competent to perform the requested testing. The Court would order the laboratory to follow all FBI guidance to ensure integrity of the evidence and reliability of the test process and results.

## CONCLUSION

[¶ 21]  For the foregoing reasons, the Defendant's Motion to Release Evidence for Forensic Testing (Doc. No. 171) would be **GRANTED** if the Court of Appeals remanded for this purpose. The Clerk's Office is directed to provide a copy of this Order to the Eighth Circuit Court of Appeals.

[¶ 22]  **IT IS SO ORDERED**.

DATED April 1, 2026.

Daniel M. Traynor, District Judge
United States District Court